IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>      Plaintiff, )<br>)<br>vs. )<br>)<br>BRYSON KNOBELOCH, )<br>)<br>      Defendant. ) | Case No: 4:18-CR-40062-JPG |

**DEFENDANT'S SENTENCING MEMORANDUM**

COMES NOW Defendant Bryson Knobeloch, by and through his attorney, Shanna K. Surratt, and hereby files the following Sentencing Memorandum in support of his request for a sentence of 120 months, which is the low end of the guideline range. Mr. Knobeloch respectfully requests that this Honorable Court consider the following factors and impose a sentence of 120months, which would be "sufficient, but not greater than necessary" to comply with the statutory directive set forth in 18 U.S.C. §3553(a).

### I.  Sentencing

*A.*  **Sentencing Under *Booker***

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in *Blakely v. Washington*, 124 S.Ct. 2531 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000) applies to the Federal Sentencing Guidelines. *United States v. Booker*, 125 S.Ct. 738, 756 (2005). In applying the holding in *Booker* to today's use of the Sentencing Guidelines, the Court is no longer bound by the Guidelines and instead the holding in *Booker*:

> "requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A.. 3553(a)(4)(Supp. 2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see §3553(a).

1

*Booker*, 125, S.Ct. at 757. Thus, under *Booker*, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. 3553(a).

The primary directive in §3553(a) is for sentencing courts to impose a sentence "sufficient, but not greater than necessary," to comply with the purposes set forth in Paragraph 2. Section 3553(a)(2) states that such purposes are:

> "(A)   to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;
> (B)   to afford adequate deterrence to criminal conduct;
> (C)   to protect the public from further crimes of the defendant; and
> (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

In determining the minimally sufficient sentence, Section 3553(a) further directs sentencing courts to consider the following factors:

> "1)   the nature and circumstances of the offense and the history and characteristics of the defendant (§3553(a)(1));
> 2)   the kinds of sentences available (§3553(a)(3));
> 3)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct (§3553(a)(6));
> 4)   the need to provide restitution to any victims of the offense (§3553(a)(7)).

Other statutory sections also give the district court guidance in determining a defendant's sentence. Under 18 U.S.C. §3582, imposition of a term of imprisonment is subject to the following limitation: "in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to recognize that imprisonment is *not* an appropriate means of promoting correction and rehabilitation." Emphasis added.

**1.   Application of the Statutory Sentencing Factors to the Facts of this Case**

In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

**a.     The Nature and Circumstances of the Offense and the History and Characteristics of the Offender**

### Nature and Circumstances of Offense

Mr. Knobeloch refers this Court to the Stipulation of Facts and Presentence Investigation Report for a summary of the nature and circumstances of this offense. Although it is not an excuse for his action, Mr. Knobeloch wants to emphasize that he was only 21 years old at the time of the offense.

### Troubled Youth

To say Mr. Knobeloch had a troubled youth would actually be an understatement. At the age of 22 years old, he has already lived a life harder than the majority of adults and has experienced a childhood that no child should every have to endure. He has never had a steady home life: he bounced between different family member's homes and his parent's home and then bounced between foster homes beginning at the age of eight years old and continued to do so until he became homeless as a teenager.

Mr. Knobeloch's life began in Florida. He fell out of truck at the age of 18 months and cracked his head open, leaving him in a coma for three days. At only the age of four years old, he was sexually abused by his oldest stepbrother, Robert Cooper. He was living with his uncle at the time. Shortly after, he was placed in his first foster home for a couple months. At only the age of five years old, he had such a behavior problem that he was placed in a group home for ages 8-18. He recalls countless times he'd come "home" only to be told: "here's a black trash bag, pack your stuff." *See Exhibit 1, Records from Illinois DCFS.*

He does not have pleasant memories about his father. Growing up, before his removal from home, he recalls his father was an alcoholic who would beat his mother in front of the him and his siblings. He recalls his father chasing his mom with a butcher knife. Although his mother left his

3

father when Mr. Knobeloch was only four years old, he did have some contact with his father while he lived in Illinois, but his dad never changed his abusive and neglectful behavior. He recalls being left outside without food, water and shelter by his father in 103 degree heat. He remembers his father breaking a wooden paddle over him during one beating.

The few times he did live with his mother, he was physically abused by her boyfriends. On one occasion, at the age of six years old, he recalls his mother's boyfriend grabbing him by his ankle and dragging him out of his bed to beat him. Regardless the man his mother would bring home, it appeared that it was always someone who would cause Mr. Knobeloch harm.

He moved to Illinois around the age of seven years old, but by the age of eight years old, he was removed from his mother's custody by Illinois DCFS because his sister had disclosed to a teacher that she was being sexually abused. His mother would later voluntarily terminate her parental rights. During his stays at various foster homes, Mr. Knobeloch recalls being refused food and baths along with being beaten by other foster children and even pushed down a flight of stairs.

At the age of eight years old, Mr. Knobeloch was placed in a foster home with a foster parent who sexually abused him. According to Mr. Knobeloch, he recalls the first two days being fine, but on the third night, he woke to this man tying up his hands, putting a knife to his throat and telling him: "if [you] say a word, I'll slit your main blood line, kill you and rape your dead body." Mr. Knobeloch said the sexual abuse occurred for a few months until he was transferred to another home. He then was transferred back to the abuser's home when he finally reported the sexual abuse to his foster brother, who reported it to authorities. Although the rapes were reported, DCFS took too long to do any rape kits, so no action was ever taken against the abuser. Mr. Knobeloch continued to bounce around foster homes.

He began therapy around the age of 9-10 years old. He disclosed the sexual abuse to the therapist, who diagnosed him with PTSD. Around this same time, he was diagnosed with Type I diabetes. It was then, at the age of eleven, that Mr. Knobeloch had his first suicide attempt by not taking his insulin. Over the course of the next several years, Mr. Knobeloch was in and out of the hospital for attempts of suicide. When he was out of the hospital, he would go to a foster home or group home where he was beaten up by other foster children.

Over the course of his young years, Mr. Knobeloch estimates he has stayed at least 25 foster homes. Finally, when he was in his late teenage years, he was essentially homeless. In 2015, he was "kicked out" of DCFS, so he would stay on various couches with gang members (he was not in a gang) and other persons. On one occasion, he was jumped by eight gang members, which landed him in the hospital. After his release from the hospital, he requested to go back into DCFS custody because he was all alone.

In 2015-2016, he was placed in the home of Nicole and Mark Knobeloch. They wanted to adopt him. Mr. Knobeloch's name at that time was Aaron Perdue, but when he lived with the Knobeloch's, they filed to have his name changed to Bryson Knobeloch. But his happiness then again faded because he was accused of sexual contact with Knobeloch's daughter so the Knobeloch's returned him to DCFS. One would think that his life could not get any worse, but then it did.

**Substance Abuse History**

Although Mr. Knobeloch had used alcohol at the age of 13 and weed at the age of 15, his substance abuse and alcohol abuse drastically increased around 2016. He abused alcohol to the point of blacking out, and by 2017, he began using crack cocaine. According to Mr. Knobeloch, in 2017, he lived next door to his weed supplier. One day, he went next door to buy weed, but the

dealer only had crack cocaine. Mr. Knobeloch tried crack cocaine that day, and from that day on, he was hooked. He said between July 2017 and August 2018, he used crack cocaine almost daily. At the time of the instant offense, he was high on crack cocaine and homeless. He voluntarily checked himself into rehab in August 2018, and then the U.S. Marshals arrested him at the rehab facility and he has been in jail since.

### Mental Health Issues

While in the Bureau of Prisons, Mr. Knobeloch requests that he receive intensive mental health treatment. He has a long history of suicide attempts beginning as early as eleven years old with his last attempt at age 17. He would try to kill himself by overdosing on insulin or cutting himself. He has been hospitalized on several occasions for mental health reasons. He currently is diagnosed with PTSD, bipolar-schizophrenia, depression and anxiety. *See Exhibits 1 and 2 attached hereto.*

    b.    **Remaining Sentencing Factors**

Based upon the Section 3553 factors as set forth in greater detail above, Mr. Knobeloch requests this Court sentence him to 120months. Mr. Knobeloch is only twenty-two years old and has endured physical, sexual and mental abuse and homelessness throughout his life. He suffers from serious mental health issues along with substance abuse issues. With a sentence of 120months, he can get drug treatment, mental health treatment, sex offender treatment along with vocational training to get him to a place where he can come out of the BOP around the age of thirty years old with the training and coping skills he will need to live a productive and happy life.

### CONCLUSION

For the foregoing reasons, Mr. Bryson Knobeloch respectfully prays this Court sentence him to 120months.

Respectfully submitted,

__/s/ Shanna Surratt_____
By:  Shanna Keel Surratt,  #6291558IL
LAYTON & SOUTHARD, LLC
1650 N. Kingshighway, Ste. 302
Cape Girardeau, Missouri  63701
(573) 335-3359  Telephone
(573) 334-0666  Facsimile
ssurratt@laytonsouthardlaw.com
*Attorney for Defendant*
*Bryson Knobeloch*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 29th day of August, 2019, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:  Mr. George Norwood.

___/s/ Shanna Surratt_____